IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED IN OPEN COURT
JUL 30 2020
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:20-cr-178 (TSE) |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Bank Fraud) |
| CAPRICE LADAWN FOSTER, | ) | |
| a.k.a. Caprice Whitley, | ) | |
| Caprice Amole-Whitley, | ) | |
| Caprice Amole, | ) | |
| Caprice Ladawn Whitley, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARCUS AARON FOSTER, | ) | |
| | ) | |
| Defendants. | ) | Forfeiture Notice |

## Indictment

July 2020 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment, unless otherwise stated:

1. Chime offered online financial services through its partner banks, The Bancorp Bank, and Stride Bank, N.A. ("Stride Bank"). On behalf of its users, Chime managed deposit accounts and other accounts held at The Bancorp Bank and Stride Bank ("Chime accounts"). The Bancorp Bank and Stride Bank are both members of the Federal Deposit Insurance Corporation ("FDIC"), and deposits made through Chime were insured by the FDIC through The Bancorp Bank and Stride Bank. As such, Chime, The Bancorp Bank, and Stride Bank were financial institutions within the meaning of 18 U.S.C. § 20.

1

2. J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") was a banking institution, the deposits of which were insured by the FDIC. As such, J.P. Morgan was a financial institution within the meaning of 18 U.S.C. § 20.

3. SunTrust Bank, N.A. ("SunTrust") was a banking institution, the deposits of which were insured by the FDIC. As such, SunTrust was a financial institution within the meaning of 18 U.S.C. §20.

4. Citibank, N.A. ("Citibank") was a banking institution, the deposits of which were insured by the FDIC. As such, Citibank was a financial institution within the meaning of 18 U.S.C. §20.

5. Defendants CAPRICE FOSTER ("CAPRICE") and MARCUS FOSTER ("MARCUS") were residents of the Commonwealth of Virginia.

6. From on or about August 8, 2017, to on or about August 5, 2019, CAPRICE was employed by Company A, a company that operated a timeshare program. CAPRICE worked in Company A's office in Washington, D.C.

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

7. The allegations contained in paragraphs 1 through 6 of this Indictment are realleged as if fully set forth herein.

### The Conspiracy and Its Purpose

8. Starting on a date unknown to the Grand Jury, but not later than in or around 2018, through in or around July 2020, in the Eastern District of Virginia and elsewhere, the defendants, CAPRICE FOSTER and MARCUS FOSTER, did knowingly and intentionally conspire with each other to commit bank fraud, in violation of Title 18, United States Code,

2

Section 1344; that is, the defendants knowingly and intentionally conspired with each other to execute a scheme and artifice to defraud one or more financial institutions, including but not limited to Chime, The Bancorp Bank, Stride Bank, J.P. Morgan, SunTrust, and Citibank, and to obtain moneys, funds, credit, and other property under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises.

### The Manners and Means

9. CAPRICE and MARCUS employed various manners and means in furtherance of the conspiracy and scheme and artifice to defraud, including the following:

10. CAPRICE and MARCUS obtained personal identifying information, such as Social Security numbers, dates of birth, driver's license numbers, and passport numbers, of real people in various ways, including by stealing mail and by using Company A's customers' personal identifiers and identification documents, which were accessible to CAPRICE through her employment with Company A.

11. CAPRICE and MARCUS opened accounts at federally insured financial institutions in the names of real people who did not know about or authorize such account openings. In order to open and use accounts in names of other people, CAPRICE and MARCUS used the real identifiers of the named applicants including their names, dates of birth, Social Security numbers, and driver's license numbers.

12. CAPRICE and MARCUS often used the addresses of vacant properties as the mailing addresses for the fraudulent accounts and retrieved mail connected to the fraudulent accounts from the vacant properties' mailboxes. Such mail included check books, debit cards, and credit cards associated with the fraudulent accounts.

13. CAPRICE and MARCUS also obtained loans and opened credit card accounts

and lines of credits using real people's personal identifiers such as names, dates of birth, and Social Security numbers. In support of these loan and credit applications, CAPRICE and MARCUS sometimes submitted fictitious earnings statements and other fake documents purporting to verify their identity as the named applicant.

14. Fraudulent accounts opened by CAPRICE and MARCUS were often funded through other fraudulent activity, including by initiating funds transfers from other fraudulent accounts and lines of credit, and by depositing stolen credit card convenience checks, stolen personal checks, altered cashier's checks, and personal checks ordered through other fraudulent accounts established by CAPRICE and MARCUS.

15. CAPRICE and MARCUS also used fraudulently obtained loans, personal lines of credit, and credit cards to make purchases and to obtain additional funds.

16. CAPRICE and MARCUS typically overdrew the fraudulent accounts and defaulted on the debts incurred on the fraudulently obtained credit cards, loans, and personal lines of credit.

### Overt Acts

17. CAPRICE and MARCUS committed overt acts in furtherance of the conspiracy in the Eastern District of Virginia and elsewhere, including the following:

#### Acts Involving Victims G.M., W.G., Chime, The Bancorp Bank, Stride Bank, and J.P. Morgan

18. In or around June 2018, G.M. traveled to Washington D.C. to vacation at G.M.'s timeshare with Company A. During this trip, G.M. met Company A representative CAPRICE while attending a timeshare presentation where G.M. was presented with incentives to upgrade G.M's timeshare membership with Company A. G.M. did not upgrade membership, but G.M. did apply for an American Express credit card affiliated with Company A's brand following the

4

presentation. Company A possessed G.M.'s personal identifying information such as G.M.'s date of birth and Social Security number in connection with G.M.'s credit card application, and CAPRICE had access to that information through her employment with Company A.

19. On or about August 27, 2018, a Chime account ending in 2856 was opened using G.M.'s personal identifying information, including G.M.'s name, date of birth, and Social Security number. On or about April 24, 2018, a Visa debit card ending in 0855 was issued in the name of G.M. for this account. G.M. did not open or use, or authorize anyone else to open or use, the Chime account ending in 2856 or the corresponding debit card ending in 0855 using G.M's personal identifying information.

20. On or about July 13, 2019, a user of the Chime account ending in 2856 changed the mailing address from 7480 Birdwood Avenue, Mclean, VA 22102, to 634 Innsbruck Avenue, Great Falls, Virginia 22066, both within the Eastern District of Virginia.

21. From in or around August 2018 until being evicted in or around April 2019, CAPRICE and MARCUS were living at 7480 Birdwood Avenue in McLean, Virginia under a lease they obtained using G.M.'s personal identifying information. During this time, CAPRICE and MARCUS received mail at the Birdwood Avenue address. Beginning no later than May 2019, MARCUS and CAPRICE used the mailbox for the residence located at 634 Innsbruck Avenue to receive and retrieve mail in the names of other people whose identities MARCUS and CAPRICE were using. G.M. has never resided in the Commonwealth of Virginia and did not use addresses in Virginia to receive mail.

22. The Chime account ending in 2856 was initially funded with transfers from a Visa card in CAPRICE's name. On or about May 1, 2019, $99.00 was transferred from a Visa card in the name of CAPRICE to the Chime account ending in 2856.

23. The Chime account ending in 2856 also received incoming transfers from an account at J.P. Morgan ending in 2916 in the name of W.G. The J.P. Morgan account ending in 2856 listed W.G.'s mailing address as 634 Innsbruck Avenue, Great Falls, Virginia 22066.

24. On or about May 25, 2019, $250.00 was transferred from the J.P. Morgan account in W.G.'s name ending in 2916 to the Chime account in G.M.'s name ending in 2856 through Zelle, a service offered to customers of certain banks to send and receive money. On or about May 26, 2019, an additional $300.00 was transferred from the J.P. Morgan account ending in 2916 to the Chime account ending in 2856 through Zelle.

25. W.G. did not open or use, or authorize anyone else to open or use, the J.P. Morgan account ending in 2916 using W.G.'s personal identifying information. W.G. has not resided in the Commonwealth of Virginia since the 1980s and was not familiar with any addresses in the McLean or Great Falls areas of Virginia associated with W.G.

### Acts Involving Victims R.R.D., H.C.P., SunTrust, and Citibank

26. In or around April 2019, married couple R.R.D. and L.D. traveled to Washington D.C. to stay at a Company A property and consider purchasing a timeshare. CAPRICE was the point of contact for R.R.D. and L.D.'s timeshare application. During the application process, CAPRICE made copies of R.R.D. and L.D's Social Security cards, drivers' licenses, and L.D.'s military identification.

27. On or about August 20, 2019, a checking account at SunTrust Bank ending in 2111 was opened in the name R.R., using R.R.D.'s date of birth and Social Security number. R.R.D. did not open or use, or authorize anyone else to open or use, the account at SunTrust Bank ending in 2111 using R.R.D.'s personal identifying information.

28. On or about August 21, 2019, MARCUS deposited a "convenience check" from a Citibank credit card account ending in 8604 in the name of H.C.P. into the SunTrust account ending in 2111. The convenience check was made payable to R.D. in the amount of $4,580.00 and was deposited at a SunTrust branch location in Great Falls, Virginia.

29. H.C.P. did not use, and did not authorize anyone else to use, the convenience check associated with his Citibank credit card. H.C.P does not know MARCUS or R.R.D.

### Additional Overt Acts

30. Between no later than in or around 2018, and in or around July 2020, CAPRICE and MARCUS opened additional fraudulent financial accounts and obtained additional loans and credit in furtherance of the charged conspiracy. CAPRICE and MARCUS attempted to, and did, transfer, withdraw, and spend funds from the fraudulent accounts, loans, and credit they obtained using the personal identifying information of other real people without their authorization.

(All in violation of Title 18, United States Code, Section 1349.)

## Forfeiture Notice

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED BELOW:

31. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, the defendants, CAPRICE FOSTER and MARCUS FOSTER, are hereby notified that, if convicted of Count One of this Indictment, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the Count of conviction. That property includes, but is not limited to, the following:

    a. A sum of money which is at least $135,000 in U.S. Currency, representing the amount of money involved in the violation of 18 U.S.C. § 1349 charged in Count One, for which the defendants are jointly and severally liable; and

    b. The 2018 Land Rover Range Rover bearing Vehicle Identification Number SALWR2RV7JA193889.

32. Pursuant to 21 U.S.C. § 853(p), CAPRICE FOSTER and MARCUS FOSTER shall forfeit substitute property, if, by any act or omission of theirs, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Title 18, United States Code, Section 982(a)(2)(A) and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL

*Pursuant to the E-Government Act,, The original of this page has been filed under seal in the Clerk's Office*

_____
FOREPERSON

_____
Date

G. Zachary Terwilliger
United States Attorney

By: *[signature]*
Heidi Boutros Gesch
Assistant United States Attorney
Philip Andriole
Special Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981

9